## Case No. 6,174.

Ex parte HARTZ et al.

[1 N. Y. Leg. Obs. 39.]

District Court, S. D. New York. 1842.

BANKRUPTCY—DISSOLUTION OF PARTNERSHIP—JOINDER IN APPLICATION.

1. Parties cannot apply jointly for a decree in bankruptcy after a dissolution of their partnership.

2. A decree in bankruptcy cannot be rendered against a firm on a voluntary application therefor, unless the whole of the partners unite therein.

[Cited in Re Crockett, Case No. 3,402; Re Sheppard, Id. 12,753.]

This was an application by the petitioners [Mark Hartz and Hirst Pinner], on their joint and several petition, for a decree in bankruptcy. Objections were filed by various classes of their creditors. It appeared that the petitioners, several years ago, carried on business as bankers in copartnership in Germany, and there contracted the joint debts from which they sought to relieve themselves; it also appeared that they dissolved partnership abroad, and had at different periods left Germany and emigrated to this country. The petitioners set forth in their schedule the partnership debts and assets, and also their separate debts and property, and they prayed for a discharge in their partnership character, and also, each respectively for himself. It was insisted that the petitioners were incompetent to take the benefit of the act, on three grounds: (1) That they had not furnished a true inventory of their assets or scheduled debts; (2) that their partnership was not entered into in this country, and that their debts were contracted abroad; and (3) that the application, being joint, could not be sustained, inasmuch as they had dissolved partnership prior to the petitioning.

Mr. Edwards, for creditors.
Brady & Maurice, for Pinner.
Mark Hartz, in pro. per.

BETTS, District Judge. The statute having made a special provision for the case of partners, and these parties applying in that capacity, the relief administered must be the one appropriate to them in that character. In discussing their right to such relief, I shall lay out of view the particular most pressed on the argument, that this was a foreign partnership between aliens, that all its debts were contracted in a foreign country, to aliens, and without reference to the United States, or the expectation of any parties interested, that the co-partners would ever transact business here, or become residents themselves in this country.[1]

The question, then, is, can persons who have been partners and become insolvent apply, after the dissolution of the partnership and the entire cessation of the partnership connection, for a common discharge under the bankrupt act? The general inquiry is presented in its strongest aspect in this case, because the partnership relation between the petitioners terminated many years since, and there is no partnership property represented to be within the jurisdiction of our laws to be acted on by the proceedings. The whole authority for proceedings by or against partners, as such, is contained in the fourteenth section [of the act of 1841 (5 Stat. 448)], and, notwithstanding some ambiguity or confusion of language in the initiatory clause of that section, it is to be remarked that every provision of the section is adapted to the

[1] [See Zarega's Case, Case No. 18,204.]

case of coercive bankruptcy, much more than to that of a voluntary application by copartners to be declared bankrupts upon the ordinary footing of such decrees. The construction of the section, in some of its bearings, came before the circuit court in the case of In re Paulson [Case No. 10,849], at the last term.

The court, however, went no further than to decide that a decree of bankruptcy rendered on the petition of a member of a firm praying such a decree in his own behalf individually and as one of a copartnership, did not affect the partnership estate, and operated no further than a voluntary transfer of his interest therein, or an assignment thereof by operation of law. This is consonant to general principles. [Harrison v. Sterry] 5 Cranch [9 U. S.] 289; 2 P. Wms. 23, note a; Doug. 627. The spirit of the decision is that a single partner, under such voluntary application, does not maintain his proceedings under the fourteenth section, but under the authority of the first, and he is to be regarded and dealt with as though his interests and indebtedness were separate and individual. 3 P. Wms. 24, note a. The same principle would govern the application of any number of partners less than the whole. It is clear, therefore, that a decree of bankruptcy against a firm cannot be rendered on the voluntary petition of partners unless all unite; and a careful scrutiny of the fourteenth section leaves it at least questionable whether it was intended to apply at all to voluntary applications, and is not to be limited to coercive proceedings, authorized to be taken by the whole or a portion of them or their creditors. The two closing numbers of the section indicate that congress had compulsory proceedings only in view, and the arrangement and distribution of the assets, as if the partnership had been dissolved without any bankruptcy, looks to that species of action in respect to partners which forces a dissolution of the connection and places their property in sequestration. The first section limits to creditors the right to institute proceedings in compulsory bankruptcy; the fourteenth section declares the order may be made on the petition of the partners, or any of them, or of any creditor of the partners; and the law, by thus increasing the class entitled to sue, could, without any special provision to that effect, impart every power and privilege before granted to creditors to their new associates. This is allowing partners to do directly what, by the English law, is done circuitously and by consent, for, although the proceedings there are wholly compulsory, in point of form they may be invoked and carried through at the instance of the bankrupt himself. 2 Chit. Pl. 559; Eden, Bankr. 49.

It is enough now to say that all the terms of the fourteenth section may be satisfied by restricting its operation to cases of involun-

tary bankruptcy, the seeming incongruity of authorizing parties to take coercive proceedings against themselves being recompensed, if not obviated, by the consideration that this method will place the partnership estate under the administration of the bankrupt law, and will enable parties to retrace a hasty step of preference granted to portions of their creditors, and secure in return a common allotment of their property to all. In this point of view, it could hardly be maintained that partners would act in repugnance to good faith, or be obnoxious to injurious imputations, who should represent that they had "willingly procured themselves to be arrested," or "their goods to be taken in execution" in favor of a friendly creditor; or "had removed the partnership goods, chattels and effects to prevent their being levied on or taken in execution" by one hostile creditor to the prejudice of all others, and pray to be deemed bankrupts therefor. The section manifestly contemplates the security of the common creditors of a partnership out of the estate of the bankrupt firm, and it would seem every way befitting the object in view that the debtor partners might be the voluntary instruments of that general good, even against antecedent acts of their own having a contrary bearing and purpose. But if the fourteenth section also empowers partners to become voluntary applicants in the same way as individual bankrupts, it appears to me, clearly, that they can be so only in the case of a copartnership then actually existing. First. The language of the section that, "where two or more persons are partners in trade," they or any of them may petition, would seem to limit the capacity to act jointly, and as partners, to the time in which they continue to be partners. Such would be the natural reading and acceptation of the expression. That construction is rendered more certain by other numbers of the section, "for them," and thus the idea of a subsisting copartnership between the applicants as the basis of their proceeding is continued and reinforced with stronger emphasis. It is unnecessary, in this connection, to consider whether the same limitation attaches to "creditors," or whether or not the partnership relation as to them may not subsist in intendment of law, without regard to the fact of its continuance between the partners. The law upholds rights and remedies to creditors upon such intendment in numerous instances when the parties charged would be estopped from claiming a partnership relationship in respect to each other. The clause already adverted to, importing that the proceedings under the fourteenth section, establishing the bankruptcy, thereby dissolve the partnership, gives additional indication that congress legislated in this section with a view to partnerships in force, when the proceedings are taken.

The result of my opinion is that parties cannot proceed by voluntary petition as partners unless they are partners at the time their application is made; and that accordingly the petition in this case, as a joint one, cannot be upheld. The petition also sets forth individual indebtedness of each petitioner, and he prays to have the benefit of the act in relation to his joint and separate debts; and it is urged that the application may be taken distributively, and decrees be rendered thereon conformably to the rights of the respective parties. It is a cardinal principle, in courts alike of common and civil law jurisdiction, to deny suitors the privilege of prosecuting their individual and separate rights in a common action. Unless their rights are joint, or arising out of the same matter of fact or law, or the remedy sought is one and the same, each suitor is put to present himself before the tribunals upon his separate rights, and to receive individually the judgment appropriate to his particular case. There is equal reason for applying this principle to proceedings in bankruptcy. Indeed, infinite confusion and perplexity would result from attempting to consolidate in one petition the application of parties who are not bound to any common order of proof, who need not be opposed by any defence applicable to all, and who cannot take a common decree.

The joint petition is accordingly dismissed, with costs, but if the petition can be so amended, without varying its essential structure and statements, as to be made applicable to either one of the petitioners solely, the parties may so amend it, and, at their election between themselves, leave it to stand for one only. Notice, however, of the election and of the amendments intended to be made to be given five days previously to the attorneys of the creditors who have filed objections to their proceedings in their present shape.